# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTION, INC., ) | 1:11cv01875 AWI DLB |
| ) | |
| Plaintiff, ) | FINDINGS AND RECOMMENDATIONS |
| ) | REGARDING MOTION TO SET ASIDE |
| vs. ) | DEFAULT AND DEFAULT JUDGMENT |
| ) | |
| ANGEL ROBERT BENITEZ, et al., ) | (Document 20) |
| ) | |
| Defendants. ) | |

On October 19, 2012, Defendants Angel Robert Benitez and Angela Gonzalez, individually and d/b/a Sanger Pool Hall ("Defendants") filed this Motion to Set Aside the Default and Default Judgment. Pursuant to Local Rule 230(g), the Court deemed the matter suitable for decision without oral argument.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff J & J Sports Production, Inc. ("Plaintiff") filed the this action on November 10, 2011. The Complaint alleged violations of 47 U.S.C. § 605 and 47 U.S.C. § 553, as well as state law causes of action for conversion and violation of Business and Professions Code section 17200, et seq. The allegations were based on Defendants' alleged unlawful interception, reception, and exhibition of "Tactical Warfare: Manny Pacquiao v. Antonio Margarito, WBC

1

Light Middleweight Championship Fight Program" ("Program"), which was telecast on November 13, 2010.  According to the Complaint, Plaintiff was the exclusive nationwide commercial distributor of the Program.

On February 1, 2012, Plaintiff filed proofs of service indicating that Angela Gonzalez was personally served on January 11, 2012, at the business address of Sanger Pool Hall.  Angel Robert Benitez was served on January 11, 2012, by substituted service on Angela Gonzalez.  The process server also mailed the documents to Angel Robert Benitez at his business address.  According to the declaration of diligence, the process server attempted service at the business address three times prior to substitute service.

On February 2, 2012, pursuant to Plaintiff's request, the Clerk of the Court entered default against Defendants.

On February 13, 2012, Plaintiff filed a Motion for Default Judgment.  The motion was served on Defendants at the business address of Sanger Pool Hall.  Defendants did not appear at the hearing or otherwise contact the Court.  On March 26, 2012, the Court issued Findings and Recommendations granting the motion for default judgment.  The Court recommended that a total award of $74,200.00 be awarded.  The award was broken down as follows: (1) Statutory damages in the amount of $10,000.00 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); (2) Enhanced damages in the amount of $60,000.00 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); and (3) Damages for conversion in the amount of $4,200.00.  Defendants did not file objections.

The Court adopted the Findings and Recommendations on September 26, 2012, but decreased the award to $34,200.00.  The Court explained:

> [I]n granting enhanced damages of $60,000.00 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), the F&R relied in part on the fact that Defendant is a repeat offender based on a previous case filed in this Court on April 28, 2011, Case No. 1:11-cv-673 AWI SMS. That case was dismissed due to a Rule 41 voluntary dismissal, there was not actually a finding of liability made.  See Doc. No. 14 in 1:11-cv-673 AWI SMS.  Plaintiff's counsel indicated at the hearing on the motion for default judgment that the voluntary dismissal in the previous case was not based on an inability to prove allegation, "but was likely the result of a settlement." Doc. No. 15 at 4:18-20.  The Court agrees that damage awards against

repeat offenders should be higher than damage awards against first time offenders. Further, there is a legitimate indication that Defendants are repeat offenders. However, given the absence of an actual judgment or showing of liability in a previous case, and the representation of only a "likely" reason for the voluntary dismissal, the Court is not comfortable awarding the sum of $60,000.00. Instead, based on the analysis of the F&R, the Court will award an amount of $20,000.00 under 47 U.S.C. § 605(e)(3)(C)(ii).

Pursuant to the Order Adopting, judgment was entered on September 26, 2012.

On October 17, 2012, attorney Matthew A. Paré filed a Notice of Appearance on behalf of Defendants. The Notice stated, "it is anticipated that a joint stipulation requesting that the default and default judgment be set aside will be filed promptly, or if necessary, Defendants will be filing a motion to set aside the default and default judgment in the very near future."

On October 19, 2012, Defendants filed the instant Motion to Set Aside the Default and Default Judgment. Plaintiff opposed the motion on November 9, 2012, and Defendants filed their reply on November 12, 2012.

## **DISCUSSION**

Defendants argue that good cause exists to set aside the default and default judgment based on excusable neglect, the existence of a meritorious defense and the lack of prejudice to Plaintiff.

A.   <u>Legal Standard</u>

Rule 55(c) of the Federal Rules of Civil Procedure provides that "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). Once default judgment has been entered, however, relief is governed by Rule 60(b). Where a defendant seeks relief under Rule 60(b)(1) based upon "excusable neglect," the court applies the same three factors governing the inquiry into "good cause" under Rule 55(c). <u>United States v. Signed Personal Check No. 730 of Yubran S. Mesle</u>, 615 F.3d 1085, 1091 (9th Cir.2010). Those factors, which courts consistently refer to as the "Falk factors," are: (1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the

default. Falk v. Allen, 739 F.2d 461, 463 (9th Cir.1984). The court may deny the motion if any one of these factors exists. Franchise Holding II, LLC. v. Huntington Restaurants Group, Inc., 375 F.3d 922, 926 (9th Cir. 2004).

Rule 60(b) is remedial in nature and must be liberally applied. Schwab v. Bullock's, Inc., 508 F.2d 353, 355 (9th Cir. 1974). Also, default judgments are generally disfavored and cases should be decided on their merits whenever reasonably possible. Id. Finally, "where timely relief is sought from a default judgment and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment so that cases may be decided on their merits." Id. "Put another way, where there has been no merits decision, appropriate exercise of district court discretion under Rule 60(b) requires that the finality interest should give way fairly readily, to further the competing interest in reaching the merits of a dispute." TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 696 (9th Cir. 2001).

"The determination of what conduct constitutes 'excusable neglect' under Rule 60(b)(1) and similar rules 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" Brandt v. American Bankers Ins. Co. of Florida, 653 F.3d 1108, 1111 (9th Cir. 2011) (citing Pioneer Inv. Svcs. Co. v. Brunswick Assoc. Ltd., 507 U.S. 380, 395 (1993)).

B.  Analysis

    1.  *Timeliness*

Motions made pursuant to Rule 60(b)(1) must be made within a reasonable time of the judgment, and no more than one year after entry of judgment. Fed. R. Civ. Proc. 60(c)(1).

Defendants contend that this motion is timely because it was filed within weeks of the September 26, 2012, judgment. Defendant Angela Gonzalez states that she did not discover that this action was separate from another action until October 2012. She states that immediately after finding out that default judgment was entered, she retained her current counsel at the

earliest opportunity, October 11, 2012.  Declaration of Angela Gonzalez ("Gonzalez Dec."), ¶ 4.  Counsel attempted to obtain a stipulation to set aside the default and default judgment on October 15, 2012, but Plaintiff's counsel did not respond to the request.  Declaration of Matthew A. Paré, ¶ 2.  This motion was filed on October 19, 2012.

Defendant Angel Robert Benitez declares that he did not receive any of the prior service documents and did not know of this action until October 3, 2012.  Declaration of Angel Robert Benitez ("Benitez Dec."), ¶¶ 2-3.

Based on Defendants' statements, Defendants obtained counsel and filed this motion within weeks of learning that default judgment had been entered.  The Court finds that Defendants brought this motion within a reasonable time of the entry of judgment.  To the extent that Plaintiff suggests that this time frame constitutes delay, the Court disagrees.

2.      *Culpable Conduct*

The Ninth Circuit has held that "a defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer."  TCI Group Life Ins. Plan, 244 F.3d at 697.  The concept of "intentionally" in this context refers to conduct that is willful, deliberate, or that evidences bad faith.  Id.  "Neglectful failure to answer as to which the defendant offers a credible good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process is not 'intentional'... and is therefore not necessarily—although it certainly may be, once the equitable factors are considered—culpable or inexcusable."  Id. at 697–98.

Here, Defendants argue that their conduct was not culpable.  Defendant Angela Gonzalez explains in her Declaration that she did not file an answer to the Complaint for numerous reasons.  First, she states that she did not understand that this action was separate from a similar action filed against her son, Angel Robert Benitez and their business, Sanger Pool Hall, by Plaintiff J & J Sports Productions, Inc. (Case Number 1:11cv00673 AWI SMS).  At the time

Defendant Angela Gonzalez was served with the summons in this case, the other action was in the process of settling and she believed that the service documents related to the other action. Compounding her failure to understand that this was a separate case was her unfamiliarity with the legal system and the fact that she speaks and reads very little English.  Gonzalez Dec., ¶ 2.

Defendant Angela Gonzalez further explains that she gave documents related to this action to Ralph Avila, her attorney in the other action.  She states that Ramona Jimenez, a legal secretary, "repeatedly assured" her that Mr. Avila was handling the "overall situation." Gonzalez Dec., ¶ 3.

Similarly, Defendant Angel Robert Benitez acknowledges that he was served by substituted service on Defendant Angela Gonzalez in January 2012, but contends that he never received any of the documents and that Angela Gonzalez never informed him of the action. Benitez Dec., ¶ 3.  He also acknowledges that according to the docket, other documents related to this action were mailed to the correct business address, but he did not "actually receive" those documents.  Benitez Dec., ¶ 3.  Upon speaking with his mother, Defendant Angela Gonzalez, he believes that he did not receive any documents because she did not understand they were related to a separate action and thought that Mr. Avila was handling the matter.  Benitez Dec., ¶ 4.

Defendants have put forth a credible, good faith explanation for their failure to answer. Given the similar captions between the two actions and Defendant Angela Gonzalez's lack of skills in reading and speaking English, it was reasonable for her to believe that this action was related to the prior action for which she had counsel.  It was also reasonable for her to expect that Mr. Avila, who was representing her in the other action, would take action if necessary, especially where she gave documents related to this action to his office and Mr. Avila's legal assured her that he was "handling the overall situation."  Gonzalez Dec., ¶ 3.

Defendant Angel Robert Benitez has also offered a good faith explanation for his failure to answer.  Based on his mother's explanation, it appears that he did not receive the service documents because she simply turned the documents over to Mr. Avila.

Plaintiff's argument regarding service is without merit.  Whether or not Defendants were served is not the standard by which their failure to act is judged.  Rather, the Court must examine their explanation for their failure to respond.

Plaintiff also suggests that Defendants "offer no explanation other than they gave it to their attorney and assumed they were going to take care of it."  Opposition, at 7.  Given the circumstances described above, however, Defendants were reasonable in their assumption.  Plaintiff's argument ignores the case law defining culpability.

There is simply no evidence that either Defendant willfully, deliberately, or in bad faith failed to respond in this action.  Defendants' conduct was not culpable.  TCI Group Life Ins. Plan, 244 F.3d at 697.

2.   *Meritorious Defense*

A defendant seeking to set aside default must allege sufficient facts that, if true, would constitute a defense.  TCI Group Life Ins. Plan, 244 F.3d at 700.  However, this burden is not "extraordinarily heavy," as a movant need only demonstrate law or facts showing that a sufficient defense is assertable.  Id.  The question of whether the factual allegations are true is not at issue at this juncture.  Mesle, 615 F.3d at 1094.

Defendants contend that at all times, they maintained what they believed was a lawful television service with DirecTV.  Defendants further believed that they were paying the necessary fee to show the Program at issue.  Gonzalez Dec., ¶¶ 6-7; Benitez Dec., ¶¶ 7-8.  Defendant Benitez states that when he called to request installation, he specifically informed DirecTV that he was requesting service at a bar.  Benitez Dec., ¶ 7.  He also notes that when the technicians came out for installation, "they could observe for themselves the nature of the

7

location." Benitez Dec., ¶ 7. Defendants were not aware that DirecTV set up their account "improperly." Gonzalez Dec., ¶ 7; Benitez Dec., ¶ 8.

Therefore, Defendants argue that they did not willfully or intentionally intercept and steal a television signal. "If they did not pay the correct commercial rate to show a particular program such as the boxing match at issue, that was because the television signal provider charged the wrong amount and they were reasonably relying upon them to provide a lawful television service to what was obviously a commercial establishment." Motion, at 12.

In the opposition, Plaintiff contends that 47 U.S.C. §§ 605 and 553 are strict liability statutes, and that Defendants' beliefs, at most, go to damages. However, as courts have recently noted, courts within the Ninth Circuit have reached conflicting conclusions as to whether strict liability applies to good faith purchases. See G & G Closed Circuit Event, LLC v. Nguyen, 2012 WL 900750, *2 (N.D. Cal. 2012); J & J Sports Productions, Inc. v. Gidha, 2011 WL 3439205, *3 (E.D. Cal. 2011).

While some courts grant summary judgment, strike an affirmative defense and/or deny a motion to set aside default based on a finding that section 605 and 553 are strict liability statutes, others courts have declined to do so. Compare G & G Closed Circuit Event, LLC v. Nguyen, 2012 WL 900750, *2 (N.D. Cal. 2012) (finding a meritorious defense where defendant alleged that DirecTV charged the residential rate rather than the commercial rate), and J & J Sports Prods. Inc. v. Gidha, 2011 WL 3439205, at *3 (E.D. Cal. 2011) (finding a potentially meritorious defense where defendants alleged that they maintained a commercial account with DirecTV but were improperly billed at the residential rate), with J & J Sports Productions, Inc. v. Aviles, 2011 WL 1884629, *3 (N.D. Cal. 2011) (declining to set aside default where defense was based on good faith purchase because sections 605 and 553 are strict liability statutes), and J & J Sports Productions, Inc. v. Mendoza-Govan, 2011 WL 1544886, *6 (N.D. Cal. 2011) (striking good faith affirmative defense because ignorance of the law does not excuse a violation) .

Moreover, a recent decision from the Northern District of California rejected plaintiff's arguments that sections 605 and 553 were strict liability statutes because the case "was still at an early pleading stage on a motion to set aside default" and defendant presented specific facts that could constitute a defense. Joe Hand Promotions, Inc. v. Reyes, 2012 WL 5205833, *2 (N.D. Cal. 2012) (in granting a motion to set aside default, finding a meritorious defense based on allegations that defendant did not know that his DISH account did not cover pay-per-view events).

Therefore, given the preference to have cases decided on the merits and the fact that the action raises a legal issue not yet resolved in this Circuit, Defendants' statements are sufficient to present the possibility of a meritorious defense.

3. *Prejudice to Plaintiff*

"To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case. Rather, 'the standard is whether [plaintiff's] ability to pursue his claim will be hindered.'" TCI Group Ins. Plan, 244 F.3d at 701 (quoting Falk v. Allen, 739 F.2d 461, 463 (9th Cir.1984)).

Defendants argue that Plaintiff has not suffered any credible harm due to the delay caused by their failure to respond. Plaintiff does not address prejudice in its opposition and the Court therefore finds that it has not shown that its ability to pursue the claims will be hindered. Merely being forced to litigate does not constitute prejudice. TCI Group Ins. Plan, 244 F.3d at 701.

The Court finds that the above factors weigh in favor of setting aside the Clerk's entry of default and the default judgment. There is a general presumption to try cases on their merits, and the instant case does not warrant a departure from this presumption. See In re Hammer, 940 F.2d 524, 525 (9th Cir. 1991). Accordingly, Defendants' Motion to Set Aside Entry of Default and Default Judgment should be GRANTED.

**FINDINGS AND RECOMMENDATIONS**

The Court finds that Defendants have demonstrated good cause and therefore recommends that Defendants' Motion to Set Aside Default and Default Judgment be GRANTED.

These Findings and Recommendations are submitted to the Honorable Anthony W. Ishii pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the Objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(c).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **December 6, 2012**                        /s/ Dennis L. Beck
                                                                    UNITED STATES MAGISTRATE JUDGE